# UNITED STATES DISTRICT COURT
for the
Northern District of California

**FILED**
Sep 27 2024
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

| United States of America | ) |
|---|---|
| v. | ) |
| Keith Reindeer Randle, | ) Case No. 3:24-mj-71438 MAG |
| *Defendant(s)* | ) |

## AMENDED CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 15, 2024__ in the county of __Marin__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(C) | Possession with intent to distribute a controlled substance, namely Methamphetamine. |

Penalties:
Maximum 20 years in prison;
$1 million fine;
Maximum lifetime supervised release - minimum 3 years;
$100 special assessment;
Forfeiture;
Mandatory and discretionary denial of Federal benefits.

This criminal complaint is based on these facts:

The attached affidavit of FBI Special Agent Kassondra Collins.

☑ Continued on the attached sheet.

Approved as to form: */s/ Benjamin K. Kleinman*
AUSA BENJAMIN K. KLEINMAN

*/s/ Kassondra Collins*
Complainant's signature

Kassondra Collins, FBI Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 9/26/2024

[Judge's signature]
Judge's signature

City and state: San Francisco, CA

HON. ALEX G. TSE, U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Kassondra Collins, a Special Agent with the Federal Bureau of Investigation, having been duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging KEITH REINDEER RANDLE with possession of a controlled substance with intent to distribute, namely Methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), occurring on or about August 15, 2024, in San Quentin, California, which is within the Northern District of California.

## SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4. I am a Special Agent with the Federal Bureau of Investigation (FBI) assigned to the Oakland Resident Agency, with headquarters in San Francisco, California, and have been so employed since June 6, 2021. My training included over 20 weeks of instruction to become a Special Agent at the FBI Academy located in Quantico, Virginia, where I received training concerning violations of the United States criminal statutes. I also received training on interview and interrogation techniques, arrest procedures, obtaining electronically stored information through criminal process, subpoena and search warrant applications, and the execution of searches and seizures, both electronically and physically.

5. I am assigned to investigate criminal cases which involve Public Corruption and Civil Rights matters. As an FBI Special Agent, I am authorized to investigate violations of United States law and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States. During these investigations, I have utilized or participated in investigations that utilized various types of investigative techniques, including the service of Grand Jury Subpoenas, undercover agents and human sources, physical surveillance, consensual recordings, investigative interviews, mail covers, trash covers, pole-mounted cameras and GPS tracking devices. I have participated in the execution of numerous federal arrest and search warrants. As a result, I have encountered and become familiar with the various methods, trends, paraphernalia and related articles used by prison employees in their efforts to smuggle, conceal, and distribute contraband drugs into prisons for inmates.

6. Prior to my current position as a Special Agent with the FBI, I was employed as a patient-oriented researcher, and an advanced emergency medical technician as I completed the final requirements to graduate from the University of Saskatchewan with my PhD in Neuroscience.

7. Based on my training and experience, as well as conversations I have had with other experienced law enforcement officers, I have become familiar with the practices of

smuggling contraband drugs into prisons. Specifically, I am familiar with methods that prison employees use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug smuggling and distribution. These methods include the use of packaging materials, wireless communications devices (such as cellular phones), third-party facilitators, peer-to-peer money transfer platforms, coded language, and/or encrypted communications. I know that many prison employees use cell phones to facilitate their drug dealing activities, including to arrange the collection, transportation, and distribution of narcotics.

8. I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including but not limited to, possession with intent to distribute a controlled substance.

## APPLICABLE STATUTE

9. Possession of Controlled Substance with Intent to Distribute: under Title 21, United States Code, Section 841(a)(1), (b)(1)(C) it is unlawful for any person to knowingly or intentionally possess with intent to distribute a federally controlled substance. Under 21 C.F.R. § 1308.12, Methamphetamine is a Schedule II controlled substance.

## STATEMENT OF PROBABLE CAUSE

10. On August 15, 2024, RANDLE was arrested by California Department of Corrections and Rehabilitation (CDCR) officers at San Quentin State Prison (SQSP), in San Quentin, California, in the Northern District of California, for possession of narcotics in SQSP. Based on the facts described below, I have probable cause to believe that RANDLE violated 21 U.S.C. §§ 841(a)(1), (b)(1)(C) – possession with intent to distribute a controlled substance.

*RANDLE SMUGGLING METHAMPHETAMINE INTO SQSP*

11. On August 15, 2024, at approximately 5:45 a.m., a SQSP Investigative Services Unit (ISU) Sergeant stopped RANDLE at a SQSP gate after he had already entered the prison

facility. RANDLE has worked as a custodian at SQSP since 2012. The ISU Sergeant informed RANDLE of SQSP's search policy for employees, which allows ISU officers to search employees while they're at work. Additionally, RANDLE signed a form consenting to a search of both his vehicle and person. The ISU Sergeant conducted a search of RANDLE's black backpack, which was initially on his person. Inside the backpack was a Reese's peanut butter jar. The ISU Sergeant observed that the lid was tightly screwed onto the jar, and a seal had been fashioned to the top of the jar so as to give the appearance that the jar was sealed. The ISU Sergeant then removed the lid and seal (observing that the jar had in fact been previously unsealed) and discovered two saran wrapped packages of suspected Marijuana wax (Butane Honey Oil) and a large quantity of suspected Methamphetamine. The ISU Sergeant did not observe any peanut butter in the jar.

12. At approximately 8:00 a.m. that same day, the ISU Sergeant and a CDCR Special Agent conducted a search of RANDLE's black 2017 XTS Cadillac with California License Plate #41653N2. During the search of the vehicle, law enforcement officers recovered a black cellular iPhone and approximately $3,350 in cash, in varying denominations of $100, $50, and $20 bills.

13. At approximately 8:50 a.m. on August 15, 2024, CDCR Special Agents conducted a digitally recorded Mirandized interview of RANDLE. RANDLE stated, in sum and substance, that he mistakenly took another employee's sandwich and jar of peanut butter from a shared refrigerator the day before and was returning the items he'd taken. RANDLE denied knowing what was located within the peanut butter jar. RANDLE alleged the cash discovered in his car had been withdrawn from the bank accounts of his ex-wife.[1] RANDLE stated he makes approximately $3,000 to $4,000 a month from his job as a janitor depending on whether he works overtime. RANDLE also stated he and his ex-wife own rental properties as an additional source of income.

---

[1] RANDLE and his ex-wife are both residing at his ex-wife's parents' house, and they still appear to be in a romantic relationship based on a review of his ex-wife's public social media accounts. For the purpose of this affidavit, I will refer to this individual as RANDLE's ex-wife based on his statements to CDCR.

14. After the interview, the ISU Sergeant conducted a Narcotics Analysis Regent Kit (NARK) test on both the suspected Marijuana wax and the aforementioned quantity of suspected Methamphetamine located in the Reese's peanut butter jar. The NARK tests yielded presumptive positive results for Marijuana for the wax and Methamphetamine for the package. The suspected Marijuana and Methamphetamine were transported to the Office of Internal Affairs and secured into a temporary evidence locker.

15. On August 19, 2024, the Methamphetamine and Marijuana wax were transported to the California Department of Justice – Bureau of Forensic Services in Santa Rosa, CA, for further analysis. On August 23, 2024, the California Department of Justice issued a Physical Evidence Examination Report. The report stated, in pertinent part, that the peanut butter jar had been painted brown and contained two twisted closed plastic bags, each containing a white substance. The lab report confirmed that the substance inside of the bags was Methamphetamine, and the weight of the Methamphetamine was 301 grams (+/- 2 grams).

*QUANTITY AND PACKAGING OF THE METHAMPHETAMINE*

16. As stated above, based on my training and experience and information from other agencies, the quantity of Methamphetamine recovered from RANDLE is an amount consistent with distribution, not personal use. The Drug Enforcement Agency (DEA) report of guidelines for Federal Trafficking Penalties (2020)[2] identifies penalties for quantities over 5 grams pure Methamphetamine and for quantities over 50 grams for mixtures containing Methamphetamine. Furthermore, according to the National Drug and Alcohol Research Center,[3] the typical dose of Methamphetamine is 0.1 grams of "base" or "ice" forms of Methamphetamine. Officials in the Sacramento County Probation Department report that the typical dose (as of 2020) is approximately 0.2 grams of Methamphetamine.[4] Based on my training and experience and the

---

[2] DEA document published at https://www.dea.gov/sites/default/files/2021-12/Trafficking%20Penalties.pdf

[3] The NADARC document can be found here: https://ndarc.med.unsw.edu.au/sites/default/files/ndarc/resources/ICE%20FORMS%20AND%20USE.pdf

[4] The DHS Sacramento County document can be found here:

images of the Methamphetamine provided to me by CDCR, it appears that the Methamphetamine was in the "ice" form, which has a translucent to white crystalline appearance. Fifty grams alone contains approximately 250 typical doses of Methamphetamine if utilizing the typical dose of 0.2 grams. Based on the weight of the Methamphetamine RANDLE had in his backpack, there is probable cause to believe RANDLE possessed with intent to distribute Methamphetamine.

17.     Additionally, the packaging of the Methamphetamine provides further indication that RANDLE intended to distribute the drug. As outlined above, law enforcement officers recovered a large quantity of Methamphetamine packed tightly into a Reece's peanut butter jar from RANDLE's backpack, which had been painted and resealed, presumably in an attempt to conceal the contents of the jar.

18.     Based on my training and experience, Methamphetamine packaged for personal use is maintained in small containers, typically little baggies or wrapped in tin foil and not in large packages. Additionally, based on my training and experience, I believe that CDCR employees who smuggle narcotics into California State prisons do so to distribute the contraband to inmates rather than for personal use.  Therefore, based on my observation of the size and weight of the Methamphetamine packages, and the fact that RANDLE attempted to smuggle the drugs into SQSP, I submit there is probable cause to believe that RANDLE possessed with intent to distribute Methamphetamine.

*FINANCIAL BENEFITS*

19.     As stated above, based on my training and experience, I know that prison employees are sometimes recruited by inmates to smuggle in contraband items, such as tobacco, cellular telephones, and drugs, including Marijuana and Methamphetamine. Prison employees who participate in the smuggling of contraband are compensated financially.

---

https://dhs.saccounty.gov/BHS/Documents/SUPT/Methamphetamine/Coalition-2020/MA-ADS-2020-02-13-Methamphetamine-Trends-in-the-Sacramento-County-Probation-Department.pdf.

20. Based on my training and experience, I know that prison employees who smuggle contraband for inmates are typically paid either directly by the inmates, or by third-party facilitators[5] who pay the prison employee on behalf of the inmates. Based on an analysis of RANDLE's financial records, it appears that RANDLE has received financial compensation directly from inmates or from third party facilitators since at least 2019, totaling well over $75,000.

21. For example, from approximately January 2019 through April 2020, RANDLE received approximately $3,500 directly from an inmate at SQSP. In the same time period, RANDLE received an additional approximately $31,000 from known and suspected inmate associates or third-party facilitators. For example, from approximately July 2021 through August 2022, RANDLE received approximately $39,226 from the wife of Inmate 1. During that same time-period, the wife of Inmate 1 received approximately $44,150 directly from Inmate 1, approximately $6,600 from other inmates directly, and an additional approximately $43,000 from other known or suspected inmate associates (totaling approximately $93,900). Also, during that same time-period, Inmate 1 received approximately $38,000 from other inmates and known or suspected inmate associates.

22. Additionally, as previously stated, during the search of RANDLE's vehicle, on August 15, 2024, CDCR recovered approximately $3,350 in cash. Based on my training and experience, I know that prison employees who smuggle contraband to inmates often use payment methods such as cash or peer-to-peer money transferring applications in order to conceal the payment. Third-party facilitators (inmate associates) who interact with prison employees are also used to conceal payments between inmates and the employees. The payments and the cash described above provide further evidence that there is probable cause to believe that RANDLE intended to distribute the Methamphetamine he possessed.

---

[5] For purposes of this affidavit, third-party facilitators are defined as friends/family of the inmate or the prison staff who help to facilitate the smuggling of contraband into prisons or conceal bribes paid by inmates.

## REQUEST TO SEAL

23. The materials now before the Court reveal sensitive details of an ongoing criminal investigation. Accordingly, in order to protect the integrity of that investigation, to guard against the flight of fugitives, and to better ensure the safety of agents and the public, I request that those materials be sealed until further order of the Court, with the qualification that law enforcement agencies be authorized to share these materials as necessary to execute any warrants.

## CONCLUSION

24. Based on my training and experience, and the facts and circumstances set forth above, I submit there is probable cause to believe that on August 15, 2024, within the Northern District of California, RANDLE possessed with the intent to distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for RANDLE's arrest.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

*/s/ Kassondra Collins*
KASSONDRA COLLINS
Special Agent
Federal Bureau of Investigation

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 26th day of September 2024. This complaint and warrants are to be filed under seal.

_____
HONORABLE ALEX G. TSE
United States Magistrate Judge